THE STATE, EX REL. WILLIAM G. IRVING, v. JEHU P. APPLEGATE, AUDITOR OF MONMOUTH COUNTY.

1. A bill for expenses for detection of offenders against the criminal laws, verified by affidavit, approved by the prosecutor of the pleas of the county as correct and reasonable, and approved and certified by the presiding judge of the Court of Oyer and Terminer, must be paid by the board of chosen freeholders of the county when presented to the board for payment.
2. A *mandamus* on the board of chosen freeholders having been issued and served, commanding the board to pay the bill, it was the duty of the board to order payment of the same, without referring it to the county auditor.
3. The county auditor having refused to allow and audit the bill, a *mandamus* is applied for to compel the auditor to audit and certify the bill to the county collector for payment. *Held*, that such *mandamus* will not lie against the county auditor.
4. The one hundredth section of the Criminal Procedure act of 1874, which legalized such expenses, prescribes the mode of auditing the same by a judge, and applies to all the counties in the state. Said section does not conflict with the previous act authorizing the appointment of an auditor for Monmouth county, and defining his duties.

5. The approval and certificate of the judge held conclusive as to the legality and amount of the bill, and neither the board nor auditor can call the bill in question.
6. The remedy of the relator is against the board of chosen freeholders under the *mandamus* already issued.

On application for *mandamus*.

Argued at November Term, 1886, before Justices REED, MAGIE and PARKER.

For the relator, *E. W. Arrowsmith.*

*Contra, J. F. Hawkins.*

The opinion of the court was delivered by

PARKER, J. A man named Samuel Johnson, usually known as Mingo Jack, was murdered in Monmouth county, on the night of the 6th of March, 1886. The prosecutor of the pleas of said county employed the relator as a detective to aid in the detection of the person or persons who committed the crime. He reported from time to time to the prosecutor of the pleas the information he obtained, and finally presented in due form, under affidavit, his bill against the county for services. This bill, verified by affidavit of the relator, approved by the prosecutor of the pleas of the county as correct and reasonable, was approved and certified by the presiding judge of the Court of Oyer and Terminer of the county of Monmouth. The bill thus verified and approved was duly presented, for payment, to the board of chosen freeholders of said county, at a regular session held in July, 1886. The board refused to pay the bill, whereupon a writ of peremptory *mandamus* was, by order of this court, issued, commanding the said board of chosen freeholders forthwith to pay said relator the amount of his said bill, with interest thereon from the 13th day of September, 1886, and costs. On the 8th day of November, 1886, the said writ of *mandamus* was regularly served on said board of chosen freeholders. The board, in-

stead of directing the county collector to pay the bill, and voting that an order for payment of the same be drawn on the county collector and delivered to the relator, passed the bill, but transmitted the same to the county auditor for audit and certificate to the county collector. A request was subsequently made, on behalf of the relator, to said county auditor to audit said bill and certify it to the county collector for payment, which the auditor refused to do.

Application is now made for a writ of *mandamus* to compel said auditor to audit said bill and certify it to the county collector.

It has been decided by this court that a claim of the nature of the bill in this case, duly verified and certified by the presiding judge, is conclusive both as to the necessity of the expense and the amount of the bill, and that it is the duty of the board of chosen freeholders of the county to pay the same on the presentation of the bill so approved and certified. *Lindabury* v. *Freeholders of Ocean County,* 18 *Vroom* 417.

The county·auditor resists the application for *mandamus* against him. He insists that an act providing for the election of a county auditor for the county of Monmouth, and defining his duties, was passed in the year 1873, by which the auditor is given discretionary power to audit all bills against said county, and that where discretion is given to an officer *mandamus* against him will not lie.

The relator claims that this case is governed by the one hundredth section of the Criminal Procedure act, passed in 1874, which section provides that it shall be the duty of the prosecutor of the pleas of each county to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws; and all necessary expenses incurred thereby, verified to and approved under his hand by the presiding judge of the Court of Oyer and Terminer or General Quarter Sessions of the Peace of any county, shall be paid by the board of chosen freeholders thereof. There is no conflict between this section of the law of 1874 and the law of 1873, providing for an auditor for Monmouth

county. Before the passage of the law of 1874 bills of this character were not legal charges against a county. There was no law authorizing such claims. Under the act of 1873 the auditor of Monmouth county had no power to audit such a bill. The law of 1874 did not take from the auditor of Monmouth county any of his powers. The one hundredth section of that act, which legalizes such expenses, at the same time prescribed the method by which the expenses thus legalized should be audited and determined. The provisions of said section apply to all the counties of the state.

The law of 1874 is imperative in its terms. The presiding judge must pass upon and, if allowed, audit the bill of expenses. His approval and certificate, regularly made, are conclusive. Neither the board of chosen freeholders nor the county auditor can call the bill in question, either as to its legality or amount. This court cannot question the amount of such a bill duly certified by the judge. The board of chosen freeholders are, by the law, required to pay the bill as determined by the presiding judge. When approved and certified, it has the force of a judgment against the county, which the board of chosen freeholders are legally bound to pay. Like a judgment against the county, it is not the proper subject of audit either by the board or the county auditor, and should not have been referred to the auditor by the board.

The auditor can only audit claims over which he has discretionary power of allowance. A *mandamus* should not be granted to compel the auditor to act on a claim, by way of audit, the legality and amount of which can, under the law, be determined only by the judge.

The claim of the relator, having been audited and certified in the mode prescribed by law, it was the duty of the board of chosen freeholders of the county of Monmouth to pay the bill upon presentation to the board, without reference to the auditor. This might have been done by directing an order for payment of same drawn on the county collector, in favor of relator and presented to him.

The board of chosen freeholders of the county of Mon-

mouth, not having paid the bill of relator upon presentation, the remedy of the relator is against the board, under the *mandamus* already issued.

The county auditor not having any power in the premises, a *mandamus* against him is refused. Neither party will pay costs to the other.