PETER VREDENBURG, RELATOR, v. CHARLES F. SEXTON.

Argued November 6, 1914—Decided June 17, 1914.

1. Under the act of April 3d, 1902, there is nothing which differentiates the assistant prosecutors in the counties of the second, third and fourth classes from those in the first class, so far as the terms of such offices are concerned. Consequently, as those who are appointed in counties of the first class hold for a term which is fixed by law, this is equally true, by necessary implication, with relation to those who are appointed in counties of the other three classes.

2. Assistant prosecutors of the pleas in the several counties are not protected by the Veterans' act of 1907 (*Comp. Stat., p.* 4873), or the Civil Service law (*Comp. Stat., p.* 3795), which prohibit the removal of the holders of certain offices. or positions, the terms of which are *not fixed by law,* except for cause.

---

On *quo warranto.* Demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and MINTURN.

For the relator, *Robert H. McCarter.*

For the defendant, *Ruliff V. Lawrence.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The relator, by this proceeding, seeks the removal of the defendant from the office, or position, of assistant prosecutor of the pleas of Monmouth county, and his own reinstatement therein.

The situation presented by the pleadings is as follows: In February, 1909, the then prosecutor of the pleas of Monmouth county, Mr. John S. Applegate, Jr., appointed the relator (who had served as a soldier of the United States in the war with Spain, and had been honorably discharged from that service) assistant prosecutor, pursuant to the authority conferred upon him for that purpose by the act of April 3d, 1902, entitled "An act to provide for assistant prosecutors in the several counties of the state." *Pamph. L., p.* 394. Five years later, Mr. Applegate's term of office having expired, and Mr. Ruliff V. Lawrence having succeeded him, the latter gentleman promptly appointed the defendant as assistant prosecutor to take the place of the relator.

The contention of the relator is that this action of Mr. Lawrence was in violation of the provisions of two separate statutes, under either of which he is entitled to retain the assistant prosecutorship during good behavior, and is not removable except upon charges, and a hearing thereon.

The statutes relied on are the so-called Veterans' act of 1907 (*Comp. Stat., p.* 4873), and the Civil Service law of 1908 (*Comp. Stat., p.* 3795). Each of these statutes prohibits the removal of the holders of certain offices, or positions, the terms of which are not *fixed by law,* except for cause; and the claim of the relator is that the assistant prosecutorship of Monmouth county is an office, or position, within these protecting provisions.

The first section of the act of April 3d, 1902, under which the relator's appointment was made, provides that "in each county it shall be lawful for the prosecutor to appoint an assistant prosecutor who  *  *  *  shall hold said appointment unless removed by the prosecutor of the pleas." The second and third sections of the act provide for the payment of these assistants, and divide the counties of the state into four classes for that purpose. In the first class—that is, in counties having a population of not more than one hundred thousand, the provision is that "the services of such assistant prosecutor shall be paid for by the prosecutor of the pleas making the appointment out of the salary or fees of such prosecutor of the pleas." The assistants in each of the other three classes are required to be paid out of the county treasury the respective salaries fixed by the act.

There is nothing in this statute which differentiates the assistant prosecutors in the various counties, except for the purpose of payment; and, therefore, either none of them hold for terms "fixed by law," or all of them do. The first section authorizes each prosecutor of the pleas to appoint an assistant, but does not require him to do so; consequently, it would seem to be the legislative intent exhibited in this section that it should be optional with each prosecutor, when he should take office, either to appoint or not to appoint an assistant as his judgment should dictate, and that it was not the purpose of the legislature to compel him to have an assistant, even against his own judgment, provided his predecessor in office should have appointed one. This being so, the case would seem to come within the principle of *Smith* v. *Regan,* 54 *N. J. L.* 167, in which it was held by the Court of Errors and Appeals that, because the statute relating to chosen freeholders provided that the board at its annual meeting should elect a county collector, such officer held for a term fixed by law, although there was no express provision in the statute to that effect, the reason being that the board could not make the appointment each year unless the term of the incumbent came to an end at the time when the next appointment was to be made. The same reasoning underlies the decisions in *Burgan*

v. *Civil Service Commission,* 84 *Id.* 219, and *Young* v. *Stafford,* 86 *Id.* 422.

But whether or not the legislative intent with relation to the character of the term is apparent from a reading of the first section alone, we do not find it necessary to decide; for, conceding that this section standing by itself leaves it uncertain, the second section clears up all doubt upon the subject. It provides, as we have already stated, that in counties having a population of not more than one hundred thousand, the services of the assistant prosecutor shall be paid for *by the prosecutor making the appointment.* If the assistant in counties of this class holds for an indefinite term, and is entitled to remain in his position during good behavior, then, by the express provision of the statute, the burden of compensating him for services rendered as such assistant after the expiration of the term of office of the prosecutor who appointed him, rests, not upon the officer who receives the benefit of such services, but upon the former incumbent who made the appointment. And this obligation on the part of the appointing officer is not terminated until the salary and fees received by him while in office are exhausted by payments made to the assistant, provided the latter holds long enough to absorb them. That the legislature intended to create such a situation is, of course, absurd. It cannot be doubted that the financial obligation imposed by the statute upon prosecutors of the pleas in counties of this class is not intended to be continued beyond the period when their respective terms come to an end; and it is equally plain, we think, that the legislature did not intend that assistant prosecutors in these counties should continue to serve after their right to compensation for services rendered had been terminated by the retirement from office of the prosecutor making the appointment.

We conclude, therefore, that the period of service of the several assistant prosecutors in these counties is coterminous with that of the officer who appoints them. In other words, that they each of them hold for a definite term, which comes to an end at the expiration of the term of the prosecutor of the pleas who makes the appointment.

As we have already stated, there is nothing in the statute which differentiates the assistant prosecutors in counties of the second, third and fourth classes from those in the first class, so far as the character of the term is concerned; and, consequently, as those who are appointed in counties of the first class hold for a term which is fixed by law, this is equally true with relation to those who are appointed in counties of the other classes. It therefore follows that Mr. Vredenburg's term expired when Mr. Applegate, from whom he received his appointment, went out of office, and that the defendant is entitled to judgment upon the demurrer.